ARANZAMENDI ET AL. *v.* LOUBRIEL ET AL.

APPEAL from the District Court of San Juan.

No. 28—Decided January 11, 1904.

HEIRS—ASSIGNMENT OR TRANSFER OF RIGHTS.—Heirs cannot assign or transfer greater rights than those which pertain to their predecessor in interest.

Ip.—PERSONALIDAD Ó CAPACIDAD.—Los herederos no pueden hacer cesión ó traspaso alguno de derechos, sin justificar ántes su personalidad como tales herederos, bien con el testamento, ó con la declaratoria judicial en que se les reconozca.

Ip.—DOMINIO.—DERECHOS DEL CAUSANTE.—Promovida una información para acreditar el dominio de ciertos bienes á título de herencia, es necesario justificar en primer término el dominio del causante.

Ip.—DERECHOS DE LOS COHEREDEROS.—Promovida una información de dominio á nombre de determinados herederos, y no á nombre de la Sucesión, no sería posible declarar el dominio de los bienes á favor de los promoventes y decretar que se inscriban á su nombre en el Registro de la Propiedad, si constare acreditado en los autos la existencia de otros herederos, cuyos derechos y acciones no estuvieren legítimamente representados en la información.

Ip.—INSUFICIENCIA DE LA PRUEBA.—Si la prueba presentada en una información de dominio no fuere suficiente para acreditar éste á favor de los promoventes, ni se hubiere probado tampoco que éstos no lo hubieren adquirido por prescripción, ó por algún otro título, la información deberá desestimarse.

COSTAS.—Las costas se impondrán á las partes cuyas pretensiones se hubieren totalmente desestimado; pero si las peticiones de ambas partes no prosperaren en absoluto, cada una debe pagar las costas ·causadas á su instancia.

## EXPOSICIÓN DEL CASO.

En los autos seguidos en el Tribunal de Distrito de San Juan á instancia de D. Alfredo Solomon y D. José Asencio Smith, en representación de sus respectivas esposas, Doña Cármen y Doña Escolástica Aranzamendi, y continuados por fallecimiento de esta última por sus hijos Doña Isabel, Doña Estela, D. Alberto y D. Alfredo, representados por su legítimo padre, Don Alfredo Solomon, sobre declaratoria de dominio de dos fincas rústicas, é incidente de oposición formulado por D. Jesús Loubriel y otros: pendientes ante *nos* á virtud del recurso de casación por infracción de ley, hoy de apelación, interpuesto por la representación de ambas partes contra la sentecia pronunciada por el referido Tribunal del Distrito en 28 de Enero de mil novecientos dos, que declaró con lugar la oposición formulada al expediente de dominio promovido por los peticionarios D. Alfredo Solo-

ID.—CAPACITY.—Heirs cannot make any assignment or transfer of rights without previously establishing their capacity as such either by means of a will or judicial declaration in which they are recognized as such.

ID.—OWNERSHIP.—RIGHTS OF PREDECESSORS IN INTEREST.—It is first necessary in judicial proceedings instituted for the purpose of proving ownership by virtue of an inheritance, to establish the ownership of the predecessor in interest.

ID.—RIGHTS OF CO-HEIRS.—It is impossible to declare the ownership of property in judicial proceedings instituted on behalf of specified heirs and not in the name of the succession, or to order the same to be recorded in their name, when the existence of other heirs appears from the record, the rights and actions of whom have not been represented in the proceedings.

ID.—INSUFFICIENCY OF THE EVIDENCE.—If the evidence presented in a judicial proceeding concerning the ownership of property is insufficient to establish the same in favor of the petitioners, and it is not proven that it was acquired by prescription, or by any other means, the proceedings must be dismissed.

COSTS.—Costs will be imposed upon the party whose demands have been wholly rejected, but if the petitions of both parties absolutely fail to succeed, each of said parties will pay the costs occasioned at his instance.

## STATEMENT OF THE CASE.

These are proceedings instituted in the District Court of San Juan, at the instance of Alfredo Solomon and José Asensio Smith, as the representatives of their respective wives, Carmen and Escolástica Aranzamendi, and continued on the death of the latter by her children Isabel, Estela, Alberto and Alfredo, represented by their legitimate father Alfredo Solomon, in the matter of a declaration of ownership over two rural estates and an incidental issue raised in opposition thereto by Jesús Loubriel and others; which case is pending before us in cassation for error of law, now ordinary appeal, taken by the representatives of both parties from the judgment rendered by the aforesaid district court, on January 28, 1902, which held that the opposition made to the declaration of ownership applied for by the petitioners Alfredo Solomon and José Asensio Smith in representation of

mon y D. José Ascencio Smith en representación de sus respectivas esposas, Doña Escolástica y Doña Cármen de Aranzamendi, y en su virtud que á D. Jesús Loubriel Rosa, D. Pedro Sayans y su esposa, Doña Rosario Lopez, y á Doña Cármen Aguilar y Santaella de Feliú, en representación de sus hijos, D. Agustin y Doña María Seculina Feliú y Aguilar, corresponden en posesión respectivamente las casas que se describen en la referida sentencia, se declaró sin lugar el expediente de dominio respecto á los terrenos que con dichas fincas se reclamaban y que no se hacía declaración alguna respecto á D. Antonio B. Caimares por no haber continuado su oposición, manifestando no encontrarse dentro de las parcelas reclamadas, sin especial condena de costas, y que luego que fuera firme esta sentencia se diera cuenta para proveer respecto á las demás porciones de terreno sobre las que no había versado la oposición.

*Resultando*: que en diez de Enero de mil novecientos el abogado D. Antonio Sarmiento á nombre de D. Alfredo Solomon y D. José Asencio Smith en representación de sus respectivas esposas, Daño Escolástica y Doña Cármen Aranzamendi, presentó escrito al extinguido Juzgado de Primera Instancia del Distrito de la Catedral de esta Ciudad ofreciendo información para acreditar el dominio de dos parcelas de terreno radicadas en el barrio de Cataño del término municipal de Bayamón, exponiendo que Don José Lúcas de Aranzamendi y Elzaburu fué dueño de dichas parcelas de terreno y las había adquirido en el sorteo verificado en quince de Octubre de mil ochocientos sesenta y uno entre los accionistas de la extinguida Compañía de vapores de Puerto Rico y formaban parte del área total de terrenos que pertenecieron á la citada Compañía la que á su vez los hubo de Doña Ana María Dávila en escritura de catorce de Enero de mil ochocientos cincuenta y uno ratificada por su heredero el Pbro. Don Mariano Dávila por la de once de Febrero de mil ochocientos noventa y dos: que muerto Don José Lúcas de Aran-

their respective wives, Escolástica and Carmen de Aranzamendi, was properly raised and by virtue thereof adjudged that Jesús Loubriel Rosa, Pedro Sayans and his wife Rosario López, and Carmen Aguilar y Santaella de Feliú, on behalf of her children Agustín and María Seculina Feliú y Aguilar, were respectively the owners of the houses described in said judgment, the proceedings to obtain dominion title to the lands claimed with said estates being dismissed, and no declaration being made with regard to Antonio B. Caimares, for the reason that he had desisted from his opposition, it being stated that his property did not lie within the estates claimed, with no special imposition of costs, and it being directed that as soon as this judgment became final the fact be reported so that the proper orders might be made with respect to the other parcels of land not included in the opposition.

On January 10, 1900, Attorney Antonio Sarmiento, on behalf of Alfredo, Solomon and José Asensio Smith, representing their respective wives, Escolástica and Carmen Aranzamendi, filed in the now abolished Court of First Instance of the Cathedral district of this city, a petition, offering evidence to establish their ownership of two parcels of land situated in the Cataño ward, of the municipal district of Bayamón, and stating that José Lucas de Aranzamendi y Elzaburu had been the owner of said parcels of land, and had acquired the same in the drawing of lots which had taken place October 15, 1861, among the shareholders of the defunct "Compañia de Vapores de Puerto Rico," and that they formed part of the total area of land belonging to said company, which had acquired it from Ana María Dávila by deed of January 14, 1851, ratified by her heir, the Rev. Mariano Dávila, in another deed dated February 11, 1892; that José Lucas de Aranzamendi, having died on January 16, 1868, the petitioner herein, Carmen, and her brothers Alberto and Genaro, were declared intestate heirs,

zamendi en diez y seis de Enero de mil ochociento sesenta y ocho fueron declarados por sus herederos abintestatos la promovente Doña Cármen y sus hermanos, Don Alberto y Don Genaro, sucediéndo á éste último su hija la otra compareciente, Doña Escolástica, según constaba de la certificación que se acompañaba: que Don Alberto falleció el seis de Abril de mil ochocientos ochenta y ocho, instituyendo por heredera á su esposa, Doña Matilde Larrinaga, la que también falleció en el año de mil ochocientos noventa y cuatro, sin dejar sucesión; y que careciendo de título bastante á los efectos del Registro de las expresadas parcelas de terreno, porque el que tenían y presentaban tenía nota denegatoria de la inscripción, promovía el expediente de dominio que autorizaba el Artículo 395 de la Ley Hipotecaria y el 6 de la Orden Judicial de 4 de Abril del año anterior, ofreciendo las pruebas de su derecho, y concluyendo con la solicitud de que, previa vista al Ministerio Fiscal, se le admitiera la información que ofrecía con citación de los propietarios de los predios colindantes y convocando por edictos y por término de sesenta días naturales á las personas ignoradas á quienes pudiera perjudicar la inscripción solicitada, y que en su día se declarara justificado el dominio de las parcelas descritas, mandando se hiciera en el Registro de la propiedad de esta Capital la oportuna inscripción por medio del correspondiente testimonio del auto aprobatorio de la información propuesta.

*Resultando*: que en unión del expresado escrito presentó el abogado defensor de los promoventes un testimonio del auto dictado por el mismo Juzgado de Primera Instancia de la Catedral en tres de Febrero de mil ochocientos noventa y nueve, por el que declaró herederos del difunto Don Lucas de Aranzamendi á su legítima hija, Doña Cármen, y á su nieta, Doña Escolástica, del mismo apellido, en representación esta última de su difunto padre, Don Genaro Aranzamendi; y otro testimonio de la declaratoria otorgada por

the last mentioned being succeeded by his daughter Escolás-
tica, the other party appearing, as shown by the certificate
accompanying the petition, that Alberto died on the 6th of
April, 1888, leaving as heir his wife Matilde Larrínga, who
also died in the year 1894, without succession; and that as they
had no recordable title to the aforesaid parcels of land, be-
cause the one held and presented by them bore a memorandum
refusing its admission to record, they instituted the proceed-
ings to establish the ownership of real estate authorized by
article 395 of the Mortgage Law and section 6 of the Judicial
Order of April 4, 1899, offering proof of their rights, and
concluding with the prayer that, after hearing the Depart-
ment of Justice, the judicial inquiry be allowed, with citation
of the owners of the adjoining estates and issue of a call for
a period of sixty natural days for the unknown persons whom
the desired record might prejudice, and that in due course the
ownership of the parcels described be declared to have been
proven, and the proper record ordered to be made in the Reg-
istry of Property of this city, in conformity with an attested
copy of the order approving the judicial inquiry applied for.

Together with the aforesaid petition, counsel for the
petitioners filed a certified copy of the order of the same
Court of First Instance of the Cathedral district, render-
ed February 3, 1899, whereby the heirs of Lucas de Aranza-
mendi, deceased, are hereby declared to be his legitimate
daughter Carmen and his grand-daughter Escolástica of the
same surname, the latter representing her deceased father
Genero Aranzamendi, and another certified copy of the dec-
laration made by José Ramón Fernández and Manuel García

Don José Ramón Fernández y Don Manuel García por escritura pública (en esta Capital) ante el escribano público Don Manuel Camuñas en doce de Abril de mil ochocientos sesenta y dos, en la que insertándose á la letra el acta de la Junta celebrada por los accionistas de la extinguida Compañía de Vapores de Puerto Rico, en quince de Octubre del año anterior, de la que resulta que reunidos en esta última fecha en la casa de los Sres. Sobrinos de Ezquiaga varios accionistas de la expresada Compañía con objeto de acordar la manera de distribuirse los terrenos que poseía dicha Sociedad en el barrio de Cataño y las demás pertenencias de la misma, que aún estaban pendientes de distribución, fué acuerdo unánime que dichos terrenos se dividieran en tantas parcelas como acciones componían el haber de la Sociedad y que se distribuyeran á la suerte entre los accionistas, adjudicándose á cada uno tantas parcelas como acciones le pertenecían, y que verificado el sorteo correspondieron al sócio Don José Lúcas de Aranzamendi las marcadas con los números 14 y 22 del plano general de los terrenos que habían formado al efecto, y había sido aprobado por la Junta, y comisionándose á los accionistas Don José Ramón Fernandez y Don Manuel García para que, con copia del acta expresada, otorgaran la competente escritura pública para mayor firmeza de la propiedad adquirida por los accionistas sobre sus respectivas parcelas, como así lo verificaron por medio de la citada escritura, declarando al efecto que los terrenos que componían la totalidad de las parcelas distribuidas constaban de doscientas diez y siete mil varas cuadradas, que eran parte de las cuarenta cuerdas de terreno que la Sociedad había adquirido por compra á Doña Ana María Dávila, según la promesa de venta que le había otorgado en catorce de Enero de mil ochocientos cincuenta y uno ante el finado Escribano Don Eusebio Nuñez, y que por virtud de dicha escritura desapoderaban y apartaban á la expresada Sociedad del derecho de propiedad, dominio y señorío que sobre dichos terrenos tenía y lo trans-

by public document executed before Notary Manuel Camuñas of this city, April 12, 1862, wherein is inserted *verbatim* the report of the meeting held by the shareholders of the defunct "Compañía de Vapores de Puerto Rico," on the 15th of October, 1861, from which it appears that various shareholders of said company, having met on that day at the house of Messrs. Sobrinos de Ezquiaga, for the purpose of deciding upon the manner of distributing the lands owned by the aforesaid company in the Cataño ward and other property belonging to them, which were still pending distribution, it was unanimously agreed that said lands should be divided into as many parcels as there were shares representing the company's assets, the same to be distributed by casting lots among the shareholders, assigning to each as many parcels as shares were held by him, which drawing having taken place, the parcels numbered 14 and 22, according to the general plan of the lands, prepared for the purpose and which had been approved by the meeting, had fallen to the partner José Lucas de Aranzamendi, the shareholders Messrs. Ramón Fernández and Manuel García, being commissioned, with a copy of the aforesaid decision, to execute the proper deed in favor of each and every one of the shareholders, so as to better insure their title to the respective property thus acquired by them, which was done, stating in the deed that the parcels distributed aggregated two hundred and seventeen thousand square *varas* and formed part of the forty *cuerdas* of land acquired by the company through purchase from Ana María Dávila, according to the promise to sell made by her, which had been duly recored in a public document executed on January 14, 1851, before the late Notary Eusebio Nuñez, and that by virtue of said deed the aforesaid company conveyed to each of the shareholders its title of ownership over the parcels which had been respectively awarded to them as stated above.

ferían á los agraciados en la parte que á cada uno había correspondido en el sorteo verificado.

*Resultando*: que al pié de dicha escritura aparece una nota del Registrador de la Propiedad de esta Capital que copiada á la letra dice así:

"No admitida la inscripción del precedente documento, en cuanto á las parcelas números 14 y 22 únicas de que se ha solicitado, por omitirse la descripción de las mismas no pudiendo por tanto averiguarse si se hallan ó no inscritas en el moderno Registro; porque apareciendo que formaban parte de la Compañía de Vapores de Puerto Rico todos los adjudicatarios de parcelas, no ha concurrido gran número de ellos á la sesión de quince de Octubre de 1861 en que se sortearon los lotes, no estando el acta de dicha sesión suscrita por todos los concurrentes; porque las escrituras de Sociedad, la de promesa de venta y ratificación de la misma se refieren á la Asociación denominada 'Compañía del Vapor de Cataño', no justificándose que esa sociedad sea la misma 'Compañía de Vapores de Puerto Rico', á que se refiere la declaratoria sobre distribución de los terrenos de Cataño; porque en el auto de declaratoria de herederos de Don José Lucas Aranzamendi se omite á su hijo Don Alberto que falleció con posterioridad y no pareciendo subsanables dichos defectos no es admisible la anotación preventiva; y suspendida además porque Don Mariano Dávila otorgante de la escritura de ratificación, no justifica el carácter de heredero de sus padres con que comparece, y por no constar que el auto de declaratoria de herederos antes citado esté ejecutoriado.—San Juan Bautista de Puerto Rico, primero de Noviembre de mil ochocientos noventa y nueve. El Registrador, José Benedicto".

*Resultando*: que admitida la información propuesta, con citación de los colindantes, y convocándose por edictos en la Gaceta Oficial á las personas ignoradas á quienes pudiera perjudicar la inscripción solicitada, comparecieron Don Antonio Caimares y Candelario, Doña Carolina Gutierrez, Don Pedro Sayans y su esposa, Doña Rosario Lopez y Don Jesús Loubriel y Rosa, bajo la dirección de sus respectivos abogados defensores, oponiéndose á la declaración preten-

At the end of the deed hereinbefore described there appears a memorandum of the Registrar of Property of this city, which reads as follows:

"The record of the above document is refused with respect to parcels Nos. 14 and 22, the only ones whose entry has been applied for, because the description thereof is not given, for which reason it is impossible to ascertain whether or not they are recorded in the modern Registry; because while all the persons in whose favor parcels had been awarded appear to have formed part of the 'Compañia de Vapores de Puerto Rico,' not many of them were present at the meeting held October 15, 1861, in which the drawing of lots took place, the record of said meeting not being signed by all of those who had attended the same; because the deeds of partnership, of promise of sale and of ratification of the latter, refer to the association designated as 'Compañia del Vapor de Cataño,' and it is not shown that said company is the same as the one known as 'Compañía de Vapores de Puerto Rico,' referred to in the declaration concerning the distribution of the Cataño lands; because in the judicial order determining the heirs of José Lucas Aranzamendi no mention is made of his son Alberto who died subsequently thereto; and inasmuch as these defects do not appear to be capable of correction, the cautionary notice is not admissible; the record being withheld also for the further reason that Mariano Dávila, grantor in the ratification deed, has failed to show his capacity as heir of his parents in which he appears, and because it is not shown that the aforesaid order determining the heirs to the estate had been executed. San Juan, Porto Rico, November 1, 1899. José Benedicto, Registrar."

The judicial inquiry applied for being admitted, and citations having been served upon adjoining property-holders, and a call for the unknown persons whom the desired record might prejudice having been published in the Official Gazette, Antonio Caimari y Candelario, Carolina Gutiérrez, Pedro Sayans and his wife Rosario López, and Jesús Loubriel y Rosa, appeared through their respective counsel in opposition to the requested declaration of ownership, alleg-

dida, y alegando que eran poseedores respectivamente de varias casas con sus solares, radicadas en los terrenos reclamados por los promoventes, las que tenían inscritas en el Registro de la Propiedad, por medio de los posesorios correspondientes, y las habían adquirido por los títulos y en las fechas que expresan en sus respectivos escritos; y exponiendo además, entre otras razones, en apoyo de su derecho, que los promoventes no sólo carecían de título de dominio sobre las dos parcelas de terreno cuya inscripción pretendían, sino que tampoco habían tenido jamás la posesión de ellas, ni podían acreditar que hubiesen pagado un centavo de contribución; y en cambio ellos justificaban sus títulos de adquisición por medio de sus respectivos posesorios, inscritos en el Registro de la Propiedad, y la posesión continua y tranquila por un número de años suficiente para adquirir el dominio, con arreglo al Artículo 1957 del Código Civil, según el cuál el dominio y los demás derechos reales sobre bienes inmuebles, se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fé y justo título; y pidiendo en conclusión, que en su día se declarara no haber lugar á la inscripción de dominio solicitada por los promoventes en lo que se refería á las casas descritas y á los solares en que se hallaban enclavadas, con imposición de las costas al que se opusiere á la declaración solicitada; continuando después la oposición por Doña Carolina Gutierrez, Doña Cármen Aguilar y Santaella, á quien la primera trasmitió sus acciones y derechos sobre la casa que decía poseer, en representación de sus hijos, Don Agustín y Doña María Seculina Feliú y Aguilar.

*Resultando*: que admitidas las pruebas propuestas por las partes, se trajeron á solicitud de los promoventes de la información propuesta, un testimonio del auto dictado por el extinguido Juzgado de primera Instancia de la Catedral de fecha dos de Enero de mil novecientos, por el que, aclarando el que dictara con fecha trece de Febrero del año ante-

ing that they were respectively the owners of several houses and their lots, situated on the lands claimed by the petitioners, which houses and lots they had recorded in their favor in the Registry of Property, on the strength of the proper possessory judgments, said property having been acquired by them through the titles and at the dates mentioned in the respective writings; setting forth, further, among other reasons in support of their right, that the petitioners not only had no title of ownership in the two parcels of land the record whereof they desired, but had never been in possession of said property, nor could they show that they had paid any taxes thereon; while they, on the other hand, could establish their title of ownership by means of the respective possessory judgments, recorded in the Registry of Property, and by their uninterrupted and quiet possession thereof for a number of years sufficient for the purposes of ownership, under article 1957 of the Civil Code, according to which "ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, in good faith and with a proper title." They therefore prayed that the declaration of ownership, as requested by the petitioners herein, be dismissed with respect to the houses described and the lots on which they stood, with costs upon whomsoever might oppose their claim; said opposition being subsequently continued in substitution of Carolina Gutiérrez, by Carmen Aguilar y Santaella, to whom the former transferred her rights and actions to the house she claimed to own, in representation of her children Agustin and María Seculina Feliú y Aguilar.

The proofs offered by the parties having been admitted, at the request of the petitioners for the judicial inquiry the following documents were submitted: A certified copy of the decision rendered by the abolished Court of First Instance of the Cathedral district, dated January 2, 1900, wherein, in elucidation of the one rendered by said court on February 13,

rior, declaró también heredero de Don José Lúcas de Aranzamendi á su hijo legítimo, Don Alberto, que falleció en seis de Abril de mil ochocientos ochenta y ocho: otro testimonio de la escritura de veinte y siete de Noviembre de mil ochocientos cuarenta y nueve sobre constitución de la Sociedad Anónima, denominada "Compañía del Vapor de Cataño", establecida en esta Capital, con un capital de cincuenta mil pesos macuquinos, dividido en quinientas acciones de á cien pesos cada una, para facilitar por medio de buques de vapor las comunicaciones dentro de la bahía de esta Capital, ó sea desde el muelle á la costa de Cataño, y con los demás puertos de la Isla, y cuya duración y demás condiciones se detallan en dicho documento: otro testimonio de la escritura otorgada en esta Capital ante el Escribano Real y del Juzgado de Guerra Don Eusebio Nuñez, en catorce de Enero de mil ochocientos cincuenta y uno, por la que declaró Doña Ana María Dávila que la Junta Directiva de la Sociedad "Vapor de Cataño" había acordado en sesión celebrada el tres de Junio del año anterior, la aprobación de la compra de cuarenta cuerdas de terrenos ubicados en el sitio de Cataño, correspondientes á la otorgante, al respecto de veinte pesos cada una, siendo de por mitad los costos de la mensura, y de cuenta de ella la confección de la escritura de venta en debida forma, tan luego como se finalizara la testamentaría de su marido Don Tomás Dávila y Quiñones; que las mencionadas cuarenta cuerdas de terrenos habían sido ya mensuradas por el geómetra Don Saturnino Rivera, el qué había extendido la correspondiente certificación; que unida al plano que igualmente levantara, había entregado á la Sociedad compradora, la que estaba en posesión del prédio vendido, según la formal entrega que le había hecho Don Felipe Dávila, como apoderado general de la compareciente, á Don Nicasio Viñas, comisionado por la expresada Junta para recibirlo; que había recibido á su satisfacción los ochocientos pesos macuquinos á que ascendían las cuarenta cuerdas, al

1899, it declared that the legitimate son of Lucas de Aranzamendi, Alberto, who had died on April 6, 1888, was also an heir to his father's estate; another certified copy of the deed of November 7, 1849, having reference to the constitution of the limited copartnership styled "Compañía del Vapor de Cataño," established in this city, with a capital of fifty thousand *pesos macuquinos,* divided into five hundred shares of one hundred *pesos* each, for the purpose of facilitating, by means of steamboats, communication within the harbor of this city, that is to say, from the wharf to the Cataño shores, and with the other ports of the Island, the duration and other conditions whereof are specified in said document; another certified copy of the deed executed in this city before the Royal and Military Court Notary, Eusebio Nuñez, January 14, 1851, whereby Ana María Dávila declared that the board of directors of the "Vapor de Cataño" company had resolved, at a session held June 3, 1850, to purchase forty *cuerdas* of land situated in Cataño, belonging to the grantor, at the rate of twenty *pesos* each, the cost of the survey to be equally apportioned between the parties, while that of the deed of sale, drawn up in due form, would be for her account, she engaging to execute the same as soon as the testamentary proceedings of her husband Tomás Dávila y Quiñones had been concluded; that the aforesaid forty *cuerdas* of land had already been measured by surveyor Saturnino Rivera, who had executed the proper certificate, which, together with the map also drawn by him, had been delivered to the purchasing company, which was in possession of the tract sold, according to formal delivery made by Felipe Dávila, as general attorney-in-fact of the vendor, to Nicolás Viñas, commissioned by aforesaid board to receive the same; that she had received to her satisfaction the sum of eight hundred *pesos macuquinos,* in payment of the forty *cuerdas,* at the price of twenty *pesos* each, and engaged to execute the deed of sale in favor of the board, with all the requisite formalities, without in-

respecto de veinte pesos una, constituyéndose por lo mismo á otorgar á la Junta la escritura de venta con todas las solemnidades consiguientes, sin gravámen ni hipoteca alguna, tan inmediatamente como se terminara el expediente de testamentaría de su citado esposo, y obligando á la observancia del compromiso que por dicha promesa de venta contraía, todos sus bienes.

*Resultando*: que también se trajo como prueba propuesta por los promoventes otro testimonio de la escritura otorgada en esta Capital ante el Notario Don Mauricio Guerra Mondragón y Megía en once de Febrero de mil ochocientos noventa y dos por el Pbro. Don Mariano Dávila y Dávila y Doña Dolores Taforó é Irizarry, por la que el primer compareciente, en su carácter de único y universal heredero de sus difuntos padres Don Tomás Dávila y Quiñones y Doña Ana María Dávila y Rivera, declaró: que habiendo sido requerido por la otra compareciente como representante de la Sucesión de su difunto esposo Don Manuel de la Cruz, otro de los accionistas de la extinguida Sociedad del Vapor de Cataño, y poseedor de las parcelas números 3 y 8 que le habían correspondido en el sorteo de que antes se ha hecho mérito, para que ratificara la escritura de promesa de venta que á favor de dicha Sociedad había otorgado su difunta madre Doña Ana María Dávila, de las cuarenta cuerdas de los terrenos de Cataño, y otorgara la de venta que su citada madre no llegó á otorgar, así lo verificó el citado Pbro. ratificando en todas sus partes la expresada promesa de venta, y trasmitiendo á favor de la Junta Directiva de la Sociedad del Vapor de Cataño, la propiedad y dominio que sobre dicho terreno pudiera corresponderle como único heredero de sus padres los expresados Don Tomás Dávila y Quiñones y Doña Ana María Dávila.

*Resultando*: que también se trajeron á solicitud de los promoventes, un testimonio del testamento nuncupativo otorgado por la citada Doña Ana María Dávila, en esta Capital,

cumbrances or mortgages, as soon as the testamentary proceedings of her late husband had been completed and to the fulfillment of which undertaking she bound all her property.

As evidence on behalf of the petitioners another certified copy was presented of the deed executed in this city before Notary Mauricio Guerra Mondragón y Mejía, February 11, 1892, by the Rev. Mariano Dávila y Dávila and Dolores Taforó é Irizarri, by which the former, in his capacity as sole and universal heir of his deceased parents, Tomás Dávila y Quiñones and Ana María Dávila y Rivera, declared: That having been summoned by the said Dolores Taforó, as representative of the estate of her late husband, Manuel de la Cruz, another of the shareholders of the defunct "Sociedad del Vapor Cataño," and in possession of parcels 3 and 8 which had been allotted to him at the above-mentioned drawing, to ratify the deed of promise to sell which his deceased mother, Ana María Dávila, had executed in favor of said company, with reference to the forty *cuerdas* of land in Cataño and to execute the one of sale which she had left unexecuted, said Mariano Dávila had duly ratified in all its parts the aforesaid promise to sell, and conveyed to the board of directors of the "Sociedad del Vapor de Cataño," such title of ownership as might appertain to him as the sole heir of his parents, the aforesaid Tomás Dávila y Quiñones and Ana María Dávila.

At the request of the petitioners the following documents were also placed on file: A certified copy of the nuncupative will executed by the aforesaid Ana María Dávila, in this city,

ante el Escribano Don Demetrio Giménez y Moreno el veinte y uno de Agosto de mil ochocientos setenta y siete, por cuya cláusula tercera declaró que había sido casada con Don Tomás Dávila y Quiñones, en cuyo matrimonio habían tenido y procreado por sus legítimos hijos, Don Mariano, Doña Anacleta, Don José María Ruperto, Doña Justa, Don Raimundo, Doña Josefa, Don Manuel y Don Tomás Dávila, de los cuáles sólo vivía en aquella fecha el primero, habiendo fallecido todos los demás sin dejar sucesión alguna; por la sexta legó el quinto líquido de todos sus bienes á su hijo de crianza Don Santiago Alberto Dávila, menor de edad entonces; y por la octava instituyó por su único y universal heredero de todos sus bienes, derechos y acciones á su hijo el citado Pbro. Don Mariano Dávila y Dávila: una certificación librada por el Secretario del Tribunal de Distrito de San Juan, en la que consta que dictado el auto de tres de Febrero de mil ochocientos noventa y nueve, por el que hizo la declaratoria de herederos de Don José Lucas de Aranzamendi, se notificó dicho provisto á las partes interesadas y al Fiscal, y como no se interpusiera contra él recurso alguno, había quedado consentido y ejecutoriado: y otra certificación del Registro Civil de esta Capital creditiva del fallecimiento de Doña Escolástica Aranzamendi y Villalón ocurrido el día dos de Agosto de 1901; que á la fecha de su fallecimiento estaba casada con Don Alfredo Solomon, en cuyo matrimonio habían procreado cuatro hijos llamados Isabel, Estela, Alberto y Alfredo, y por último el informe emitido por el Alcalde de Bayamón, Don F. Matheu, del que resulta que el Ayuntamiento de aquél pueblo no acostumbraba hacer cesiones ó ventas de terrenos en Cataño para dedicarlos á solares, limitándose el Concejo á conceder permisos para construcciones en aquél punto, en los sitios que los interesados expresaran en sus respectivas instancias, pero dejando á salvo el derecho de propiedad y sin perjuicio de tercero.

*Resultando*: de las certificaciones del Secretario y Al-

before Notary Demetrio Giménez y Moreno, August 21, 1867, by clause 3 whereof she declares that she had been married to Tomás Dávila y Quiñones, by which marriage she had had the following as her legitimate children: Mariano, Anacleta, José Maria, Ruperto, Justa, Raimundo, Josefa, Manuel and Tomás Dávila, of whom the only one then living was Mariano, all the others having died without issue; by clause 6 she bequeathed the net fifth of all her property to her foster-child, Santiago Alberto Dávila, then a minor; and by clause 8 she instituted her son, the aforesaid Mariano Dávila y Dávila, as sole and universal heir to all her property, rights and actions; a certificate issued by the clerk of the District Court of San Juan wherein it is stated that upon rendering the decision of February 3, 1899, determining the heirs of José Lucas de Aranzamendi, notice of said decision was served upon the parties concerned and upon the *Fiscal,* and as no appeal was taken against it, it was considered as having been acquiesced in, and became final; and another certificate from the civil registry of this city, attesting the death of Escolástica Aranzamendi y Villalón, which occurred on August 2, 1901; and stating that at the date of her death she was married to Alfredo Solomon, from which marriage she had four children respectively named Isabel, Estela, Alberto and Alfredo; and, lastly, the report of the Alcalde of Bayamón, F. Matheu, from which it appears that the municipal council of said town is not in the habit of granting or selling lands in Cataño for the purpose of converting them into lots, said corporation confining itself to granting permits for the construction of houses in that locality, at the places described by the applicants in their respective petitions, but reserving the right of property and without prejudice to third parties.

From the certificates of the secretary and Alcalde of Baya-

calde de Bayamón traidas á solicitud de los opositores, que Don Jesús Loubriel, Don Antonio Mauri, Doña Carolina Gutierrez, Don Gabriel Chiessa y Don Eduardo y Doña Rosario Lopez Cepero figuraban en los padrones de riqueza de aquél pueblo en los años y por los conceptos y con las cuotas de contribución que se expresan en dichos documentos; no así Don José Asencio, Don Alfredo Solomon, Doña Cármen Aranzamendi, Doña Escolástica y Don José Lúcas del mismo apellido, los cuales no figuraban en los padrones de riqueza de dicha población con cuota alguna de contribución por terrenos en el barrio de Cataño.

*Resultando*: que en el acto del juicio oral, el Perito Don Armando Morales que había sido nombrado á solicitud de los promoventes, se ratificó en el plano que había presentado y obraba en autos, de las parcelas objeto de la información propuesta; declarando los testigos de los opositores Don Eduardo Martorell, Don Liborio Fuentes, Don Arturo Iglesias y Don Raimundo Rodriguez que hacía muchos años vivián en el poblado de Cataño, y que nunca habían conocido allí como propietarios ni poseedores de terrenos en aquéllos contornos al difunto Don José Lúcas de Aranzamendi, ni á sus hijas, Doña Cármen y Doña Escolástica, de igual apellido; que tampoco habían conocido allí á ningún colono ni arrendatario de terrenos poseyendo el todo ni parte de las parcelas que reclaman como suyas en estos autos las hermanas Aranzamendi en nombre de éstas ni de su difunto padre Don José Lúcas; y que hacía muchos años conocían á Don Jesús Loubriel y á los esposos Don Pedro Sayans y Doña Rosario Lopez como poseedoras y propietarios de casas y solares en el poblado de Cataño, sin que nunca hayan sido inquietados ni interrumpida su continuada posesión por reclamación ni acto alguno de las hermanas Aranzamendi, ni de otra persona á su nombre; y á preguntas del abogado defensor de los promoventes, que no conocen los títulos en virtud de los cuáles poseen dichos individuos; agregando ade-

món, submitted at the request of the opponents, it appears that the names of Jesús Loubriel, Antonio Mauri, Carolina Gutiérrez, Gabriel Chiessa and Eduardo and Rosario López Cepero, stood on the register of taxpayers of said town during the years, for the property, and with the proportion of taxes, specified in said documents; not so José Asensio, Alfred Solomon, Carmen Aranzamendi and Escolástica and José Lucas, of the same family name, who did not appear on the register of taxpayers of said town with any tax whatever on lands in *barrio* Cataño.

At the oral trial the expert witness, Armando Morales, who had been appointed at the request of the petitioners, ratified his testimony with respect to the map he had presented and which was joined to the record, of the parcels of land which formed the subject-matter of the proposed judicial inquiry, and the witnesses for the opposition, namely Eduardo Martorell, Liborio Fuentes, Arturo Iglesias and Raimundo Rodriguez, testified that they had been for many years residents of the *barrio* of Cataño, and had never known the late José Lucas Aranzamendi or his daughters Carmen and Escolástica as owners or possessors of lands in that neighborhood; that neither had they known there any settler or lessee of lands possessing in whole or in part the parcels claimed herein as their property by the Aranzamendi sisters, either in their name or in that of their deceased father, José Lucas; and that they had for many years known Jesús Loubriel and Pedro Sayans and his wife Rosario López as owners and possessors of houses and lots in the town of Cataño, without ever having been disturbed in their quiet and uninterrupted possession by any claim or act of the Aranzamendi sisters, or of any other person in their name; and in reply to questions put by counsel for the petitioners herein, they stated that they did not know by virtue of what titles said persons had acquired possession; the witness Eduardo Mar-

más el testigo Don Eduardo Martorell que reconocía como suyas la firma y rúbrica estampadas en el documento obrante al fólio 55, y el otro testigo Rodriguez que es poseedor de terrenos en Cataño por títulos de dominio y posesorio adquiridos de los anteriores dueños, y que es opositor en su carácter de Concejal del Ayuntamiento en un expediente de dominio promovido por Don J. Elzaburu; y Doña Cármen Aranzamendi que ignoraba si su padre, Don José Lúcas, hubiera estado ó no en posesión de las dos parcelas de terreno, porque ella era muy niña cuando su padre murió, y en cuanto á ella que no ha estado en posesión por haberse marchado á New York; que no le consta si se han pagado ó no contribuciones por las citadas parcelas, pues estaba en la creencia de que las pagaba su marido, y en cuanto á su padre se atiene á lo que había declarado ántes; que como no conocía el sitio de las parcelas, no podía impedir que fabricaran en ellas; que se considera con derecho puesto que desde que llegó de Nueva York ha empezado á practicar gestiones sobre las citadas parcelas; y que no las ha declarado para el cómputo de la contribución, por no estar en posesión de ellas.

*Resultando*: que terminado el juicio oral dictó sentencia el Tribunal de Distrito de San Juan en veinte y ocho de Enero de mil novecientos dos, declarando con lugar la oposición formulada al expediente de dominio promovido por Doña María del Cármen y Doña Escolástica Aranzamendi, y por fallecimiento de ésta sus hijos, Doña Isabel, Doña Estela, Don Alberto y Don Alfredo, representados por su padre Don Alfredo Solomon declarando en su virtud que á Don Jesús Loubriel Rosa, Don Pedro Sayans y su esposa Doña Rosario Lopez, y á Doña Cármen Aguilar y Santaella de Feliú en representación de sus hijos Don Agustin y Doña Maria Seculina Feliú y Aguilar corresponden en posesión respectivamente las casas que se des-

torell adding that he acknowledged as his own the signature
and rubric affixed to the document on folio 55 of the record,
and the other witness, Rodriguez, that he is the owner of lands
in Cataño by virtue of titles of ownership acquired from for-
mer owners, and that as a member of the municipal council
he is an opponent in the proceedings to acquire possession in-
stituted by J. Elzaburu; while Carmen Aranzamendi testi-
fied that she did not know whether or not her father, José
Lucas, had been in possession of the two parcels of land,
because she was very young when her father died, and as for
herself, she had not taken possession thereof because she
had moved to New York; that she could not say of her own
knowledge whether or not taxes had been paid upon said
parcels, she being under the impression that they were paid
by her husband, and as regarded her father, she maintained
what she had already testified; that as she did not know where
the parcels were situated, she could not prevent the erection
of buildings thereon; that she considered herself as having
a right over said parcels, for which reason since she arrived
from New York she had begun to take steps for the recovery
thereof; and that she had not reported them for assessment,
because she was not in possession of said property.

Upon the termination of the oral trial, the District Court of
San Juan, on January 28, 1902, rendered judgment admitting
the opposition offered to the proceedings to obtain dominion
title instituted by María del Carmen and Escolástica Aranza-
mendi, the latter having died, being substituted by her chil-
dren Isabel, Estela, Alberto and Alfredo, represented by their
father Alberto Solomon, and declaring accordingly that Jesús
Loubriel Rosa, Pedro Sayans and his wife Rosario López, and
Carmen Aguilar y Santaella de Feliú y Aguilar were respect-
ively the owners of the houses described in said judgment;
the proceedings to obtain dominion title with respect to said
lands were dismissed; no declaration being made with regard
to Antonio B. Caimari, he having desisted from his opposi-

criben en dicha sentencia: se declara sin lugar el expediente de dominio respecto á los terrenos que con dichas fincas se pretende: que no se hace declaración alguna respecto á Don Antonio B. Caimari por no haber continuado su oposición manifestando no encontrarse dentro de las parcelas reclamadas, sin especial condena de costas; y que firme que sea esta sentencia se dé cuenta para proveer respecto á las demás porciones de terreno de que no se ha hecho oposición.

*Resultando*: que contra esta sentencia interpusieron recurso de casación por infracción de ley los representantes de ambas partes, fundando el suyo la representación de los promoventes en los números 1, 2 y 7 del Artículo 1690 de la Ley de Enjuiciamiento Civil, y citando como infringidos los Artículos 1940, 1957 y 1973 del Código Civil y 394 de la Ley Hipotecaria en su párrafo 5, y la representación de los opositores, como fundado en el No. 1 del mismo Artículo 1690 de la citada ley de trámites y citando como infringido el Artículo 63 de la Orden General No. 118, por cuanto habiéndose declarado con lugar en todas sus partes la oposición formulada al expediente de dominio, debió el Tribunal, de acuerdo con las prescripciones terminantes de dicho Artículo, imponer todas las costas á los contrarios que temerariamente habían impugnado dicha oposición; y admitidos dichos recursos y elevados los autos á esta Superioridad, con citación y emplazamiento de las partes, personadas éstas y sustanciados los recursos interpuestos, se dió á los autos la tramitación marcada por la ley de la Asamblea Legislativa de esta Isla, transformando esta Corte Suprema en Tribunal de Apelación, y en su consecuencia, entregados los autos nuevamente para instrucción, y devueltos que fueron, se señaló día para la vista, que se celebró con asistencia é informe de los abogados defensores de las partes.

Abogados de las promoventes:  *Sres. Sarmiento y Bosch.*
Abogado de los opositores:  *Sr. Torres Monge.*

tion because, as declared by him, he had no property within the limits of the parcels claimed; no special imposition of costs being made; and that after said judgment had been made final, notice thereof should be given so that the necessary orders might be made with respect to the other parcels of land concerning which no opposition has been made.

From this judgment the representatives of both parties took appeals in cassation for error of law, counsel for the petitioners basing their appeal on paragraphs 1, 2 and 7, of article 1690 of the Law of Civil Procedure, and citing as having been violated articles 1940, 1957 and 1973 of the Civil Code, and article 394, paragraph 5, of the Mortgage Law; while counsel for the adverse parties, basing their appeal on paragraph 1 of article 1690 of the Law of Civil Procedure, cited as violated section 63 of General Order No. 118, inasmuch as the opposition to the proceedings to obtain dominion title having been admitted in all its parts, the court, pursuant to the definite provisions of said section, should have imposed all the costs upon the adverse parties who had rashly controverted said opposition. Said appeals having been allowed and the records having been transmitted to this court, and the parties having been cited and summoned, and they having appeared and the appeals interposed having been heard, the records were disposed of in the manner prescribed by the act of the Legislative Assembly of this Island converting this Supreme Court into a court of appeals, and in consequence thereof, the records having been again submitted for examination and having been returned, a day was set for the hearing, which was held with the attendance and upon argument of the attorneys of the parties.

*Messrs. Sarmiento* and *Bosch,* for petitioners.
*Mr. Torres Monge,* for respondents.

EL JUEZ PRESIDENTE SR. QUIÑONES, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Considerando*: que atendido el mérito de la documentación presentada por los promoventes D. Alfredo Solomon y D. José Ascencio Smith en representación de sus respectivas esposas Doña Escolástica y Doña Cármen Aranzamendi, y las demás pruebas traidas á estos autos por los opositores D. Jesús Loubriel, Don Pedro Sayans y su esposa Doña Rosario Lopez y Doña Cármen Aguilar no puede estimarse acreditado el dominio de las promoventes sobre las dos parcelas de terreno á que se refieren estos autos, pues alegándose haberlas adquirido por herencia de su difunto padre Don José Lúcas de Aranzamendi, necesitaban acreditar que éste fuera legítimo dueño de ellas, lo que no han probado de ninguna manera, toda vez que ni la extinguida sociedad del Vapor de Cataño, de quien se dice que las hubo el difunto Aranzamendi, llegó á adquirir el dominio de los terrenos de que se trata, por no habérselo trasmitido Doña Ana María Dávila por la escritura de catorce de Enero de mil ochocientos cincuenta y uno calificada por las mismas partes contratantes de simple promesa de venta, ni cumplido la obligación y compromiso que se impuso en el citado documento de otorgarle la escritura de venta real tan pronto se finalizara la testamentaría de su difunto esposo Don Tomás Dávila y Quiñones, ni se ha probado en ninguna forma que dicha Doña Ana María fuera realmente verdadera dueña de los terrenos de que se trata, pues antes al contrario, habiendo aplazado el otorgamiento de la escritura de venta hasta que se terminara la testamentaría de su difunto marido, lo que lógicamente se deduce de esto es, que no tenía título de propiedad sobre esas tierras y que esperaba el arreglo de la testamentaría de su esposo para obtenerlo y poder entonces trasmitírselo válidamente á la Empresa ó Compañía del Vapor de Cataño, con la que había contratado anticipadamente la compra venta de los expresados terrenos.

MR. CHIEF JUSTICE QUIÑONES, after making the above statement of facts, delivered the opinion of the court, as follows:

Having considered the merits of the documents presented by the petitioners herein, Alfredo Solomon and José Asensio Smith, on behalf of their respective wives, Escolástica and Carmen Aranzamendi, and the proofs submitted by the opponents Jesús Loubriel, Pedro Sayans and wife, Rosario López and Carmen Aguilar, the ownership of the petitioners of the two parcels of land referred to in the record cannot be regarded as having been established, for in alleging that they had acquired them by inheritance from their deceased father, José Lucas de Aranzamendi, it was necessary for them to prove that he was the lawful owner thereof, which they have altogether failed to do, inasmuch as the defunct "Sociedad del Vapor de Cataño," from which it is said the deceased Aranzamendi had obtained them, did not acquire the ownership of the lands in question, owing to the fact that María Dávila had not transferred them to him by virtue of the deed of January 14, 1851, described by both contracting parties as simply a promise to sell, nor fulfilled the obligation and undertaking she imposed upon herself in said document, to execute the deed of sale as soon as the testamentary proceedings of her late husband, Tomás Dávila y Quiñones, had been completed; nor has it been in any manner proven that said Ana María was the real owner of the lands in question, but, on the contrary, she having deferred the execution of the deed of sale until the settlement of her late husband's estate, it is logically to be inferred therefrom that she had no title of ownership in said lands, and that she was awaiting the settlement of the testamentary proceedings in order to obtain such title, when she would be in a position to transfer the same, validly, to the "Empresa" or "Compañia del Vapor de Catañ " with which she had beforehand for contracted the purchase and sale of aforesaid lands.

*Considerando*: que tampoco le presta mayor fuerza y efi-
cacia á la titulación presentada por los promoventes, la escri-
tura otorgada por el Pbro. Don Mariano Dávila en su carác-
ter de heredero único y univérsal de sus difuntos padres Don
Tomás Dávila y Quiñones y Doña Ana María Dávila á favor
de la Junta Directiva de la Sociedad del Vapor de Cataño,
en esta Capital, á once de 'Febrero de mil ochocientos noven-
ta y dos, por la que ratificando el compromiso contraido por
su citada difunta madre en la escritura de promesa de ca-
torce de Enero de mil ochocientos cincuenta y uno de otorgar
á la Empresa del Vapor de Cataño la escritura de venta en
forma de las enunciadas cuarenta cuerdas de terreno, le cede
y traspasa la propiedad y dominio que en dichas tierras pu-
diera corresponderle como tal único heredero de sus difuntos
padres, pues ni como heredero de su citada madre Doña Ana
María Dávila podía ceder y traspasar á la Empresa del
Vapor de Cataño más derechos de los que á aquella corres-
pondían, y ya se ha expresado que no se ha probado los
tuviera, ni consta que los hubiera adquirido de la testamen-
taría de su difunto esposo, que no aparece haya sido apro-
bada en ninguna forma, ni podía ceder ni traspasar tampoco
los derechos que le correspondieran sobre esas tierras como
único heredero que dijo ser de su difunto padre Don Tomás
Dávila y Quiñones, cuando ni siquiera se ha probado su per-
sonalidad con el testamento ó declaratoria judicial que lo
acreditara como tal único heredero de su citado difunto
padre.

*Considerando*: por otra parte, que aún prescindiendo de
los defectos de que adolecen los títulos de propiedad de las
promoventes Doña Cármen y Doña Escolástica de Aranza-
mendi, es evidente que habiendo promovido la información
de que se trata en su propio nombre y no á nombre de la
Sucesión de su difunto padre Don José Lúcas de Aranza-
mendi, no es posible declarar el dominio de los terrenos á
favor de las promoventes y mandar que se inscriban á su

Nor does the deed executed in this city, February 11, 1892, by the Rev. Mariano Dávila, in his capacity as sole and universal heir of his deceased parents, Tomás Dávila y Quiñones and Ana María Dávila, in favor of the board of directors of the "Sociedad del Vapor de Cataño," whereby, in ratification of the document signed by his mother, January 14, 1851, promising to execute the deed of sale of the aforesaid forty *cuerdas* of land, he conveys and transfers such title thereto as may pertain to him as sole and universal heir of his deceased parents, impart any additional strength and efficacy to the rights claimed by the petitioners herein, for even as heir of his mother, the aforesaid Ana María Dávila, he could not convey and transfer to the "Empresa del Vapor de Cataño" greater rights than appertained to her, and it has not been shown that she had any at the time, nor does it appear that she afterwards acquired such rights as a result of the testamentary proceedings concerning her husband's will, which does not seem to have been approved in any manner or form, nor could he convey and transfer the rights appertaining to himself over said lands as sole heir, as he claims to be, of his deceased father, Tomás Dávila y Quiñones, when not even his identity has been established by the will or judicial declaration which instituted him as such sole heir of his deceased father.

On the other hand, even waiving the defects in the titles of ownership presented by the petitioners, Carmen and Escolástica Aranzamendi, it is evident that, having instituted the proceedings in question in their own name, and not in the name of the succession of their deceased father, José Lucas Aranzamendi, the ownership of the lands cannot be adjudged in favor of the petitioners herein nor the same ordered to be recorded in their name in the Registry of Property, when

nombre en el Registro de la Propiedad, constando como consta acreditado en estos autos que fueron tres los herederos abintestato de Don José Lucas de Aranzamendi, su hija Doña Cármen, su nieta, Doña Escolástica, en representación de su padre Don Genaro, hijo también del difunto Don José Lúcas, y su otro hijo, D. Alberto, que falleció en seis de Abril de mil ochocientos ochenta y ocho, y cuyos derechos y acciones como tal heredero de su finado padre Don José Lúcas no consta quién ó quienes los representen legitimamente en la actualidad.

*Considerando*: por tanto que no siendo suficiente la documentación presentada por los promoventes para acreditar el dominio de sus respectivas esposas Doña Escolástica y Doña Cármen Aranzamendi sobre las dos parcelas de terreno á que se refiere la presente información, y no habíendose probado por otra parte que las hubiesen adquirido por prescripción, ni por ningún otro título, puesto que consta plenamente probado que ni Doña Escolástica ni Doña Cármen Aranzamendi, ni su padre y causante Don José Lúcas del mismo apellido poseyeran jamás por si ni por mediación de ninguna otra persona los terrenos de que se trata; por todos cuyos motivos procede que se desestime la información propuesta por Don Alfredo Solomon y Don José Asencio Smith en las representaciones con que intervienen en estos autos.

*Considerando*: en cuanto á la oposición formulada por Don Antonio B. Caimari, Don Jesús Loubriel, Don Pedro Sayans y su esposa Doña Rosario López y Doña Cármen Aguilar en representación de sus hijos menores Don Agustín y Doña María Seculina Feliú y Aguilar, que si bien han alegado como fundamento de su oposición que son legítimos poseedores respectivamente de varias casas con sus solares correspondientes, enclavados en los terrenos reclamados por los peticionarios y que los poseen con buena fé y justos títulos y por el tiempo que exige el Artículo 1957 del antiguo Código Civil para adquirir por prescripción el dominio de los in-

it appears from the record that there were three intestate heirs of José Lucas de Aranzamendi, namely, his daughter Carmen, his granddaughter Escolástica, in representation of her father, Genaro, also a son of the deceased José Lucas, and his other son Alberto, who died April 6, 1888, the legitimate representative or representatives of whose rights and titles as heirs of the deceased father, José Lucas, are at present unknown.

The documents presented by the petitioners to establish the ownership of their respective wives, Escolástica and Carmen Aranzamendi, of the parcels of land mentioned herein, being, therefore, insufficient, and as on the other hand, it has not been proven that they acquired them by prescription or by any other title, since it has been fully shown that neither Escolástica nor Carmen Aranzamendi, nor their father, José Lucas de Aranzamendi, from whom they derived their right, had ever possessed the lands in question, either personally or through the mediation of any other person, the institution of proceedings to obtain dominion title commenced by Alberto Solomon and José Asensio Smith, in their respective representations herein, should, for all these reasons, be denied.

As to the opposition set up by Antonio B. Caimari, Jesús Loubriel, Pedro Sayans, and his wife Rosaria López and Carmen Aguilar, the latter in representation of her infant children Agustín and María Seculina Feliú y Aguilar, although they have alleged as ground for their opposition that they are respectively the legitimate possessors of several houses and lots, situated within the lands claimed by the petitioners, and that they possess the same in good faith and with just title, and have been in possession thereof for the time required by article 1957 of the old Civil Code, for the acquisition of ownership of real estate by prescription, no decision with respect

muebles, no procede hacerse ninguna declaratoria respecto de dichas casas por ser materia extraña á la información propuesta, toda vez que sobre ellas no ha versado la reclamación establecida por los peticionarios; y que concretada la petición formulada por los opositores en sus respectivos escritos respecto de los solares en que aquéllas están fabricadas á que se declare que no procede en lo que á ellos se refiere la inscripción solicitada por los promoventes, es ocioso que se haga respecto de dichos solares declaración especial alguna, toda vez que denegada la declaración de dominio de las dos parcelas de terreno pretendida por los promoventes, y por consiguiente su inscripción en el Registro de la Propiedad, queda implícitamente resuelta la pretensión establecida por los opositores respecto de los expresados solares, y denegada por consiguiente su inscripción en el Registro, que era precisamente lo que aquéllos pretendían en la súplica de sus respectivos escritos.

*Considerando*: que según la Regla 63 de la Orden General número 118, las costas deben imponerse á la parte cuyas pretensiones hayan sido totalmente desestimadas, y que en los demás casos resolverá el Tribunal conforme á equidad, es lógico deducir que, cuando las peticiones de ambas partes no prosperen en absoluto, como en el presente caso sucede, cada una de ellas debe pagar las costas causadas á su instancia.

*Vistos* los Artículos 395 de la Ley Hipotecaria de esta Isla y 358 y 360, de la Ley de Enjuiciamiento Civil.

*Fallamos*: que debemos declarar y declaramos no haber lugar á aprobar la información propuesta por Don Alfredo Solomon y Don José Asencio Smith en representación de sus respectivas esposas Doña Escolástica y Doña Cármen de Aranzamendi, y en su consecuencia que no procede declarar á favor de éstas el dominio de las dos parcelas de terreno á que se refiere la presente información. Se declara asímismo no haber lugar á dictar pronunciamiento alguno respecto de las casas reclamadas por los opositores Don Antonio B.

to said houses is called for, this matter being foreign to the proceedings instituted, inasmuch as the claim set up by the petitioners does not bear upon this issue; and the petition of the opponents in their respective writings with reference to the lots on which said houses stand being confined to asking that the application for a record be dismissed as regards said lots, there is no occasion for making any special pronouncement thereon, inasmuch as the declaration of ownership of the two parcels of land requested by the petitioners herein, being refused, and consequently also the record thereof in the Registry of Property, the demand of the opponents with respect to the aforesaid lots is implicitly decided with the refusal of their record in the Registry, which was exactly what they requested in the prayer of their respective petitions.

Inasmuch as according to Rule 63 of General Order No. 118 the costs should be imposed upon the party whose demands are totally rejected, and in other cases the court shall render a decision agreeable to equity, it is logical to infer that, when the petitions of both parties absolutely fail to succeed, as happens in the present case, each of the said parties should pay the costs occasioned at his instance.

In consideration of articles 395 of the Mortgage Law of this Island, and articles 358 and 360 of the Law of Civil Procedure, we adjudge that we should deny and do deny the title of ownership applied for by Alfredo Solomon and José Asencio Smith, as representatives of their respective wives, Escolástica and Carmen de Aranzamendi, and consequently the ownership of the two parcels of land referred to in the present proceeding should not be declared in their favor  We likeyise declare  that no pronouncement is called for with respect to the houses claimed by the opponents herein, namely, Antonio B. Caimari, Jesús Loubriel,

Caimari, Don Jesús Loubriel, Don Pedro Sayans y su esposa Doña Rosario Lopez y Doña Cármen Aguilar en representación de sus hijos menores; y en cuanto á los solares en que aquéllas radican, estése á lo resuelto en esta sentencia respecto á las parcelas de terreno reclamadas por los promoventes, sin especial condenación de costas de ambas instancias; confirmándose en lo conforme y en lo que no, revocándose, la sentencia apelada.

Jueces concuerrentes: Sres. Hernández y MacLeary.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso; y el Juez Asociado Sr. Sulzbacher no tomó parte en su resolución.

---

Mendez *v.* La Administración de Puerto Rico.

Apelación procedente de la Corte de Distrito de San Juan.

No. 7.—Resuelto en Enero 15, 1904.

Impuestos.—Tesorero de Puerto Rico.—Con arreglo á la Ley Orgánica el Tesorero de Puerto Rico no puede adicionar ó modificar los impuestos establecidos por la O. G. de Noviembre 7, 1899, pues es facultad exclusiva de la Legislatura de Puerto Rico.

Id.—Las Leyes y demás disposiciones en materia de impuestos y rentas no tienen carácter extraterritorial, estando circunscritos sus efectos á los límites territoriales del Estado que las decreta.

Id.—Fabricantes.—La palabra *fabricantes* usada en el párrafo cuarto de la O. G., No. 176, de 1899, no tiene aplicación á los fabricantes extrangeros de líquidos alcohólicos.

Id.—Liquidos Alcoholicos.—Aunque los líquidos alcohólicos fabricados en el extrangero pueden gravarse indirectamente, es necesaria una disposición legal que terminantemente obligue á los importadores al pago de los impuestos.

EXPOSICIÓN DEL CASO.

En el recurso que en grado de apelación ante *nos* pende, entre partes de la una el Honorable Attorney-General de

Pedro Sayans and his wife, Rosario López, and Carmen Aguilar, in representation of her minor children; and as regards the lots on which said houses stand, the decision rendered in this case with respect to the parcels of land claimed by the petitioners herein, shall be abided by, without special imposition of costs in either the lower or the appellate courts; the judgment appealed from being affirmed where agreeable hereto, and reversed where not.

Justices Hernández and MacLeary concurred.

Mr. Justice Figueras did not sit at the hearing of this case, and Mr. Justice Sulzbacher did not take part in the decision.